JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

4.06cv2473

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
TAMMY D. COMEAUX

(b) County of Residence of First Listed Plaintiff: **Harris**
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Richard L. Coffman, Richard L. Coffman, P.C., 1240 Orleans St., Ste. 200, Beaumont, TX 77701; (409) 832-4767

## DEFENDANTS
AMR CORPORATION, AMERICAN AIRLINES, INC., BRITISH AIRWAYS PLC., UAL CORPORATION, UNITED AIRLINES,

County of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
JUL 26 2006
MICHAEL N. MILBY, CLERK OF COURT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☒ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1331 and 1337

Brief description of cause:
International conspiracy to fix, raise, maintain, and/or stabilize surcharges for fuel in airline passenger transport.

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE: 07/24/2006
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

4084

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY D. COMEAUX, on behalf of herself and all other similarly situated persons and entities, § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:06cv2473 | |
| PLAINTIFF | | |
| VS. | **UNITED STATES COURTS SOUTHERN DISTRICT OF TEXAS FILED** | |
| AMR CORPORATION, AMERICAN AIRLINES, INC., BRITISH AIRWAYS PLC, UAL CORPORATION, UNITED AIRLINES, INC, VIRGIN ATLANTIC AIRWAYS, LTD. and JOHN DOES 1-100, | **JUL 2 6 2006** **MICHAEL N. MILBY, CLERK OF COURT** | |
| DEFENDANTS | JUDGE _____ | |

### REPRESENTATIVE PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Representative Plaintiff Tammy D. Comeaux ("Comeaux"), on behalf of herself and all other similarly situated persons and entities (as defined in the Class below), complains of the actions of Defendants AMR Corporation, American Airlines, Inc., British Airways PLC, UAL Corporation, United Airlines, Inc, Virgin Atlantic Airways, Ltd. and John Does 1-100, and respectfully shows the following:

### NATURE OF THE ACTION

1.      This action arises from an international conspiracy to fix, raise, maintain and/or stabilize surcharges for fuel ("Fuel Surcharges") in airline passenger transport ("Airline Travel") by major Airline Travel providers (collectively, the "Airlines" or the "Defendants"). The

1

surcharges are fees assessed to individuals and/or entities seeking transport via air on behalf of themselves or others ("Airline Customers"). The purported purpose of said surcharges is to compensate the Airlines for certain external costs, including increased fuel costs.

2. Comeaux, on behalf of herself and all other persons and entities that purchased Airline Travel for routes within, to, or from the United States, directly from any of the Defendants, their co-conspirators, or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 20, 2004 to the present (the "Class Period"), brings this action to obtain injunctive relief and treble damages for violations of the United States antitrust laws. At all relevant times, the Defendants were Airlines charging Fuel Surcharges to Airline Customers in the United States and throughout the world. As further alleged herein, during the Class period, the Defendants agreed, combined, and conspired with each other to fix, raise, maintain, and/or stabilize Fuel Surcharges. As a result of the Defendants' unlawful conduct and conspiracy, Comeaux and the Class members paid artificially high Fuel Surcharges and have been damaged thereby.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

4. This Court has jurisdiction over the Defendants because each of them was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in Texas and throughout the United States.

5. Venue is proper in the Southern District of Texas, pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c), and (d), because during the Class period one or more of the Defendants

resided, transacted business, was found and/or had agents in the Southern District of Texas and a substantial part of the events giving rise to Comeaux's claims occurred in, and a substantial portion of the affected interstate trade and commerce described below has been carried out in, the Southern District of Texas.

## PARTIES

6. Plaintiff Tammy D. Comeaux ("Comeaux") is a citizen and resident of Houston, Harris County, Texas. During the Class Period, Comeaux purchased Airline Travel for routes within, to, or from the United States, directly from at least one of the Defendants and has been injured in her business and property as a result of the violations alleged in this Complaint.

7. Defendant AMR Corporation ("AMR Corp.") is a Delaware corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, TX 76155, and whose subsidiaries include Defendant American Airlines, Inc.. AMR Corporation, through its subsidiaries, provides Airline Travel throughout the world, including within, to, or from the United States. AMR Corp. may be served with Summons and a copy of this Original Class Action Petition and Jury Demand by serving its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

8. Defendant American Airlines, Inc. ("American Airlines") is a Delaware corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, TX 76155. American Airlines provides Airline Travel throughout the world, including within, to, or from the United States. American Airlines is a subsidiary of AMR. At all relevant times, AMR owned, dominated and controlled the business of American Airlines. American Airlines may be served with Summons and a copy of this Original Class Action Petition and Jury Demand by serving its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

9. Defendants AMR Corp. and American Airlines collectively will be referred to as "AMR."

10. Defendant British Airways PLC ("British Airways") is a foreign Airline headquartered at Waterside, UB7 GB Harmondsworth, Middlesex, England. British Airways' principal place of business in the United States is at 75-20 Astoria Blvd., Jackson Heights, NY 11370. British Airways provides Airline Travel throughout the world, including within, to, or from the United States. British Airways may be served with Summons and a copy of this Original Class Action Petition and Jury Demand by serving its registered agent CT Corporation System, 350 N. St. Paul St., Dallas, TX 75201.

11. Defendant UAL Corporation ("UAL Corp.") is a Delaware corporation with its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, Illinois, and whose subsidiaries include Defendant United Airlines, Inc. UAL, through its subsidiaries, provides Airline Travel throughout the world, including within, to, or from the United States. UAL may be served with Summons and a copy of this Original Class Action Petition and Jury Demand under the Texas Long-Arm Jurisdiction Statute, Sections 17.041-17.045 of the Texas Civil Practice and Remedies Code, by serving any officer or agent registered to accept service at its corporation headquarters, 1200 E. Algonquin Rd., Elk Grove Township, Illinois, through service on the Secretary of the State of Texas, P.O. Box 12887, Austin, Texas 78711.

12. Defendant United Airlines, Inc. ("United Airlines") is a Delaware corporation with its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, Illinois. United Airlines provides Airline Travel throughout the world, including within, to, or from the United States. United Airlines is a subsidiary of UAL. At all relevant times, UAL owned,

4

dominated and controlled the business of United Airlines. UAL may be served serving its registered agent Prentice Hall, 800 Brazos, Austin, TX 78701.

13. Defendants UAL Corp. and United Airlines collectively will be referred to as "United."

14. Defendant Virgin Atlantic Airways Limited ("Virgin Atlantic") is a foreign Airline headquartered at The Office, Crawley Business Quarter, Manor Royal, Crawley, West Sussex RH10 9NU England. Virgin Atlantic's principal place of business in the United States is at Belden, Ave., Norwalk, Connecticut, 06850. Virgin Atlantic provides Airline Travel throughout the world, including within, to, or from the United States. Virgin Atlantic may be served under the Texas Long-Arm Jurisdiction Statute, Sections 17.041-17.045 of the Texas Civil Practice and Remedies Code, by serving any officer or agent registered to accept service at its corporation headquarters, 747 Belden, Ave., Norwalk, Connecticut, 06850, through service on the Secretary of the State of Texas, P.O. Box 12887, Austin, Texas 78711.

15. Various other individuals, partnerships, corporations, organizations, firms, and associations not yet named as Defendants in this case (the "Co-Conspirators"), and presently unknown to Comeaux, participated as Co-Conspirators in the violations, performed acts and made statements in furtherance of the combination in restraint of trade and unfair business practices alleged herein.

16. The true names and capacities, whether individual, corporate, associate, representative, or otherwise of Defendants Does 1 through 100 are unknown to Comeaux at this time, and are therefore sued by such fictitious names. Comeaux will, and reserves the right to, amend this Complaint to allege the true names and capacities of Does 1 through 100 when she learns their identities.

## INTERSTATE TRADE AND COMMERCE

17. According to a 2006 press release, entitled "2005 Total Airline System Passenger Traffic Up 4.6 Percent from 2004," issued by the Department of Transportation's Bureau of Transportation Statistics, a total of 745.7 million passengers traveled within, to, and from the United States on U.S airlines alone in 2005.

18. According to the Department of Transportation's Bureau of Transportation Statistics, total revenues for all United States Airlines exceeded $21.9 billion in the first quarter of 2006 alone.

19. Throughout the Class Period, there was a continuous and uninterrupted flow of transactions between Airlines and Airline Customers for Airline Travel throughout the United States and the world.

20. Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce, affected Airline Customers located throughout the United States and the world, and had a direct, substantial and reasonably foreseeable effect in the restraint of trade upon interstate and international commerce.

## CLASS ACTION ALLEGATIONS

21. Comeaux brings this action pursuant to FED. R. CIV. P. 23 on behalf of herself and the members of the following Class:

> All persons and entities who purchased Airline Travel, for routes within, to, or from the United States, directly from any of the Defendants, or their Co-Conspirators, or any predecessor, subsidiary, or affiliate of each, at any time during the period from no later than January 20, 2004 to the present.

Excluded from the Class are all governmental entities, the Defendants (including their parents, subsidiaries, affiliates, predecessors, successors, officers, and directors) and the Co-conspirators (including their parents, subsidiaries, affiliates, predecessors, successors, officers, and directors).

6

22. Comeaux does not know the exact number of Class members because such information is in the exclusive control of the Defendants. Due to the nature of the trade and commerce involved, however, Comeaux believes that Class members number at least in the hundreds of thousands and are geographically dispersed throughout the United States, thereby making joinder of all Class members impracticable.

23. There are questions of law or fact common to the Class including, *inter alia*:

(i) Whether Defendants engaged in a combination or conspiracy among themselves to fix, raise, maintain and/or stabilize Fuel Surcharge prices in the United States and throughout the world?

(ii) The duration of the alleged conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy?

(iii) Whether the alleged conspiracy violated Section 1 of the Sherman Act?

(iv) Whether the alleged wrongful conduct caused injury to the business or property of Comeaux and the Class members?

(v) The effect of Defendants' conspiracy on Fuel Surcharge prices in the United States and throughout the world during the Class Period?

(vi) The appropriate measure of damages sustained by Comeaux and the Class members?

24. Comeaux's claims are typical of the claims of the Class members. Comeaux will fairly and adequately protect the interests of the Class. Comeaux directly paid Fuel Surcharges to one or more Defendants; her interests are coincident with, and not antagonistic to, those of other Class members. Comeaux is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

25. The questions of law and fact common to the Class members predominate over any questions affecting only individual members. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

26. Certification, therefore, is appropriate under FED. R. CIV. P. 23(b)(3). Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many of the Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties in management that would preclude maintenance as a class action.

## DEFENDANTS AND THE AIRLINE TRAVEL MARKET

27. The market for Airline Travel is massive, of which the Defendants possess significant market share. For example:

   (i) AMR's total operating revenues exceeded $20 billion for fiscal year 2005.

   (ii) UAL's passenger revenues exceeded $12 billion for fiscal year 2005.

   (iii) British Airways reported profits of approximately £620 million in the fiscal year ending March 2006, with Fuel Surcharges contributing significantly to revenue growth (*see* British Airways 2006 annual report, "Other revenue improved by 51 per cent [sic] to £1,197 million, primarily due to the increase in passenger and cargo fuel surcharges").

28. Airline Travel is a commodity product that can be provided by any one Airline, and be readily substituted for by that of any other Airline.

29. The Airline Travel market in the United States and worldwide is highly concentrated; substantial barriers to entry in this market exist. Both factors facilitate the implementation and maintenance of a horizontal price-fixing cartel such as the conspiracy perpetrated by Defendants.

## GLOBAL AIRLINE ALLIANCES AND TRADE ASSOCIATIONS FACILITATED CONCERTED ACTION

30. The Defendants are members and participate in the activities of several global Airline alliances and trade associations. These alliances facilitate cooperation between the Defendants in determining, instituting, enforcing, and communicating about the Fuel Surcharges, their increases, and the maintenance thereof.

### International Air Transport Association

31. The International Air Transport Association ("IATA") is a trade association whose members include 265 airlines from more than 140 nations worldwide. Flights by IATA member airlines comprise 94 percent of all international scheduled air traffic. All Defendants are members of IATA.

32. The Defendants are on numerous IATA Committees that deal with various aspects of Airline Travel. For example, IATA's Operations Committee is led by an official from British Airways. Likewise, IATA's Environment Committee, which considers aircraft fuel efficiency, includes representatives from British Airways and AMR.

33. IATA is a vehicle for Airline cooperation. IATA facilitated cooperation between the Defendants in determining, instituting, enforcing and/or communicating about the Fuel Surcharges, their increases, and the manipulation thereof.

### Oneworld Alliance

34. Oneworld Alliance is a global Airline alliance whose members include AMR and British Airways.

35. Oneworld Alliance facilitated cooperation between Defendants in determining, instituting, enforcing and/or communicating about the Fuel Surcharges, their increases, and the manipulation thereof.

### Star Alliance

36. Star Alliance is a 16-member global Airline alliance whose 16 members include United.

37. Star Alliance facilitated cooperation between Defendants in determining, instituting, enforcing and/or communicating about the Fuel Surcharges, their increases, and the manipulation thereof.

### DEFENDANTS' FUEL SURCHARGES

38. Generally, surcharges are separate, fixed fees applied to Airline Travel, by which Airlines (such as the Defendants) charge extra fees above and beyond the typical ticket price to Airline Customers with the purported purpose of defraying certain external costs.

### Fuel Surcharge

39. Beginning on or about January 20, 2004, the Defendants agreed to act in concert with one another to fix, raise, maintain and/or stabilize Fuel Surcharges for Airline Customers.

40. Defendants implemented their agreement to fix, raise, maintain, and/or stabilize Fuel Surcharges by publicly announcing previously agreed-upon increases to Fuel Surcharge and exchanging information in secret, including the total ticket prices charged to Airline Customers for Airline Travel within, to, or from the United States and elsewhere, for the purpose of monitoring and enforcing the previously agreed-upon Fuel Surcharge levels.

41. Due to Defendants' concerted action, prices of the Fuel Surcharges were fixed, raised, maintained and/or stabilized to or at artificial and supra-competitive levels throughout the Class Period.

## Timing and Amount of the Fuel Surcharges

42. Throughout the Class Period, the Defendants continually raised their Fuel Surcharges, often within days of one another.

43. For example, on or about May 13, 2004, British Airways introduced a Fuel Surcharge of £2.50, or approximately $4 per flight. Other Fuel Surcharge hikes occurred on or about August 11, 2004, October 14, 2004, March 22, 2005, June 27, 2005, and September 12, 2005. By June 13, 2006, British Airways' Fuel Surcharge had grown to £70, or more than $125 for international flights.

44. On or about December 19, 2003, AMR increased its Fuel Surcharges by $3 to $13 for travel within the U.S and between the United States and Canada. Other increases occurred on or about April 20, 2004 and October 19, 2004.

45. On or about May 18, 2004, Virgin Atlantic introduced a Fuel Surcharge of £5, or approximately $8 per flight. By June 13, 2006, its Fuel Surcharge had likewise grown to £70, or more than $125 for international flights.

46. British Airways' and Virgin Atlantic's Fuel Surcharges mirrored each other in amount and often increased within days of each other.

47. On or about June 9, 2006, AMR and United, among others, increased their Fuel Surcharges on transatlantic flights by $10 to $75 each way.

## DEFENDANTS PROFITED FROM THE FUEL SURCHARGE

48. Surcharges are designed to compensate for increases in external costs, and thus should be tied to the price of external costs. In a competitive market, if the cost of jet fuel falls, Fuel Surcharges should fall as well.

49. Since approximately 2004, however, the ratio of Defendants' Fuel Surcharges to external costs has increased steadily. For example, according to the United States Department of Energy, when the New York spot price of a gallon of jet fuel plummeted from approximately $2.17 to $1.87 per gallon between September 2005 and March 2006, Defendants' Fuel Surcharge prices remained at a proportionately higher level, and seldom, if ever, fell.

50. Through a dominant combined market share, a number of cooperative agreements to share ticket services and carry passengers for one another, and a number of methods by which they shared real-time information on prices, the Defendants controlled a vast majority of Airline Travel during the Class Period and were able to fix, raise, maintain, and/or stabilize Fuel Surcharges and reap enormous profits there from.

## DEFENDANTS' FUEL SURCHARGE PRICES WERE FLAWED, UNFAIR TO CUSTOMERS, AND ADVERSE TO THE PUBLIC INTEREST

51. The Defendants' outstanding profit margins on Fuel Surcharges are contrary to the purpose of a surcharge. Such profits resulted from the Defendants' conspiracy to fix, raise, maintain and/or stabilize the Fuel Surcharge, as well as the Airlines' long-standing practice of successfully hedging against fluctuations in fuel prices. For example, British Airways was reported to be hedging the prices on more than 50 percent of its fuel requirements in 2006.

52. Absent Defendants' agreement to fix, raise, maintain and/or stabilize the Fuel Surcharges, the effect of Defendants' fuel price hedges would be to lower Fuel Surcharges. Yet, the Fuel Surcharges increased dramatically throughout the Class Period.

53. In fact, the Defendants knew that similar attempts to artificially maintain the Fuel Surcharges for air cargo had been denied by the United States Department of Transportation ("DOT") as *fundamentally flawed and unfair.*" See e.g., DOT Order No, 2000-3-7 at 2, Docket OST-2000-6837-2 (emphasis added). There, the IATA sought antitrust immunity from the DOT

for a coordinated Fuel Surcharge price index for air cargo in 2000. The DOT, however, flatly denied the IATA's proposal because it would subject Airline Customers to *"unjustified and unwarranted rate increases."* Id. (emphasis added).

54. In denying the IATA proposal, the DOT held that:

> [The] IATA's proposed index mechanism, which reflects the volatile nature of the spot market, is at best an imperfect measure of the impact of fuel price increases on carriers. *Most carriers employ fuel-hedging programs, which they use to limit the effects of jet fuel price volatility* and thus discipline their costs. Indeed, under these programs, *many prudent carriers manage to hedge between 70-80 percent of their total fuel needs*. . . . [T]he difference between the average actual fuel prices, as reported to the Department . . . increased about six percent, while *IATA's index, based on spot market prices, showed a 34 percent increase over the same period.*

Id. (emphasis added).

55. According to the DOT, the IATA Fuel Surcharge mechanism had "direct application in foreign air transportation," and the resolution seeking antitrust immunity was *"adverse to the public interest."* Id. at 3 (emphasis supplied).

56. The Defendants, therefore, knew (or should have known) that their actions to fix fuel surcharges would violate the antitrust laws of the United States, and be "fundamentally flawed," "unfair," and "adverse to the public interest." Id.

### THE INVESTIGATIONS

57. Beginning on June 13, 2006, antitrust investigators from the United States and the United Kingdom, including the British Office of Fair Trading ("OFT"), the United States Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") raided Defendants' offices or initiated investigations into each of Defendants' Fuel Surcharges.

58. The raids and investigations, according to several British media outlets, including the BBC and the *Guardian* newspaper, were in response to a tip from Virgin Atlantic that Iain

Burns, the head of communications of British Airways, allegedly telephoned his counterpart at Virgin Atlantic to ask how Virgin Atlantic might react if British Airways increased its Fuel Surcharge.

59. In various statements, Defendants have acknowledged these raids and investigations.

60. British Airways admitted that it is being investigated by the OFT and the DOJ for cartel activity relating to its Fuel Surcharges.

61. AMR admits to having received a federal grand jury subpoena relating to its Fuel Surcharges.

62. It also has been reported that Virgin Atlantic and United are under investigation for potential cartel activity relating to their Fuel Surcharges.

## CLAIMS AND CAUSES OF ACTION

63. Comeaux incorporates, by reference, the facts and allegations set forth in the preceding paragraphs of this Complaint.

64. During the Class Period, the Defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize Fuel Surcharges (and possibly other surcharges) in the United States and throughout the world in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

65. In formulating and effectuating the alleged contract, combination, or conspiracy, the Defendants engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain and/or stabilize the prices of Fuel Surcharges. These activities included, *inter alia*:

(i)     agreeing to Fuel Surcharges at certain levels and otherwise to fix, raise, maintain, and/or stabilize the prices of Fuel Surcharges assessed in the United States and throughout the world;

(ii)     signaling increases in the price of Fuel Surcharges by, *inter alia*, publicly announcing Fuel Surcharge increases; and

(iii)     announcing new Fuel Surcharge prices nearly simultaneously.

**66.** During the Class Period, Defendants increased the Fuel Surcharges. These increases in Fuel Surcharges cannot be explained by actual increases in fuel prices or supply/demand forces, but rather were the result of anticompetitive conduct.

**67.** During the Class Period, Comeaux and the Claim members paid Fuel Surcharges directly to Defendants.

**68.** The Defendants' illegal combination and conspiracy has had the following effects, among others:

(i)     price competition in Fuel Surcharges has been restrained, suppressed and/or eliminated;

(ii)     price competition in the contracting of Airline transportation has been restrained, suppressed and/or eliminated;

(iii)     Fuel Surcharges assessed by the Defendants have been fixed, raised, maintained and/or stabilized at artificially high, non-competitive levels; and

(iv)     Comeaux and the Class members have been deprived of the benefit of free and open competition.

**69.** During the Class Period, Comeaux and the Class members paid higher Fuel Surcharges they would have paid absent Defendants' antitrust violations. As a result, Comeaux and the Class members have been injured and damaged in their business and property in an amount to be determined.

**70.** As a direct and proximate result of the illegal conspiracy, Comeaux and the Class members have been injured in their respective businesses and property in that they have paid

15

higher Fuel Surcharges during the Class Period than they would have paid in the absence of the illegal conspiracy. Comeaux and the Class are entitled to three times their actual damages resulting from Defendants' illegal conspiracy to fix Fuel Surcharges.

**WHEREFORE,** Comeaux, on behalf of herself and the putative Class, respectfully requests that (i) the Defendants be cited to appear and answer this lawsuit, (ii) this action be certified as a class action, (iii) Comeaux be designated as the Class Representative, and (iv) Comeaux's counsel be appointed as Class counsel. Comeaux, on behalf of herself and the putative Class, further requests that upon final trial or hearing, judgment be awarded against the Defendants, jointly and severally, for:

(i) actual damages to be determined by the trier of fact;

(ii) treble damages;

(iii) declaratory and injunctive relief as set forth above;

(iv) pre- and post-judgment interest at the highest legal rates;

(v) reasonable and necessary attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

(vi) costs of suit; and

(vii) such other and further relief that this Court deems just and proper.

### JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Comeaux respectfully demands a trial by jury of all of her claims and causes of action.

Respectfully submitted,

By: _____
Richard L. Coffman, Esq.
State Bar No. 04497460
**THE COFFMAN LAW FIRM**
1240 Orleans St., Suite 200
Beaumont, TX 77701
(409) 832-4767
(866) 835-8250 fax

**ATTORNEYS-IN-CHARGE FOR THE REPRESENTATIVE PLAINTIFF AND PUTATIVE MEMBERS**